In the Matter of CITY OF ALBANY et al., Petitioners, *v.* ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board, Respondents, and ALBANY PERMANENT PROFESSIONAL FIREFIGHTERS ASSOCIATION, Intervenor-Respondent.

Third Department, April 27, 1971.

*John W. Hacker, Corporation Counsel* (*Robert G. Lyman* of counsel), for petitioners.

*Martin L. Barr* for respondents.

*William J. Rodgers* for intervenor-respondent.

*Per Curiam.* This is a proceeding under article 78 of the CPLR (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Employment Relations Board (PERB) which found that the City of Albany had committed unfair labor practices in violation of section 209-a of the Civil Service Law.

The Albany Permanent Professional Firefighters' Association (APPFA) was organized on February 16, 1970 and elected Michael Romano as president, Richard Fish and Joseph Sioui as vice-presidents. On February 25, 1970 a letter signed by Romano as president was delivered to Fire Chief Brophy demanding recognition of APPFA as exclusive representative of Albany firefighters. On February 28, 1970, Romano, Fish and Sioui, along with other union officers, met in one of the Albany fire stations. On March 9, 1970, pursuant to an order of Fire Chief Brophy, Romano and Fish were transferred to different engine companies. On March 13, acting Lieutenant Sioui apparently had a conversation with certain off-duty firefighters concerning union matters which was reported to Battalion Chief Fitzmaurice (now Chief, following Brophy's retirement in March, 1970). Later that morning Sioui was replaced as officer-in-charge of Company No. 1.

As a result of these events, the association filed charges with respondent alleging violations of subdivision 1 of section 209-a of the Civil Service Law, which sets forth certain "improper employer practices", including the deliberate interference or coercion of public employees in the exercise of their right to participate in a union and discrimination against an employee for the purpose of discouraging participation in a union. The hearing examiner and the board found that this section had

been violated by the city and ordered the reinstatement of Romano, Fish and Sioui to their former assignments and ordered the city to "cease and desist from" similar coercive conduct. In this proceeding, petitioners assert that the decision of respondent was arbitrary and capricious, an abuse of discretion, and not based upon substantial evidence.

We recognize that an employer has the right to make work assignments and that this right applies to public employers. This right, however, does not extend to actions designed to discourage or penalize union activity protected by statute. Thus, whether the abrupt transfer or demotion of the union leaders shortly after the Association was organized, constitutes an improper labor practice, depends upon the motive therefor.

In determining such motive, the hearing examiner considered (1) whether there was a legitimate purpose served by the transfers; (2) whether the timing of the transfers and demotion were such as to relate them to union activities; and (3) whether there existed an "anti-union animus" on the part of the city and Fire Chief that would cause their motives to be questioned.

Petitioners have failed to state a valid reason for the transfers. While it cannot be said that the transfers were entirely frivolous, since the transferred firefighters were qualified for the duties to which they were assigned, nevertheless, there was sufficient evidence to conclude that the acts of the city were not required for the most efficient operation of the department.

Chief Brophy, at the time of the transfers, stated that they were for the "betterment of the department", but gave no specific justification. However, Romano was selected out of some 40 other qualified firefighters, and the vacancy had existed for at least a month. The timing of the transfers and demotion coincided with the period of initial union organization. Less than one month had expired between the time of the first organizational meeting of APPFA and the alleged improper acts. Brophy obviously knew of the union activities of the firefighters involved.

Furthermore, the record reveals the existence of a strong anti-union animus on the part of Chief Brophy. After reading the letter sent to him by Romano and Fish, Brophy replied: "Look, I told you as far as I'm concerned there is no — I recognize no association and there will be none as far — as long as I'm the chief." Lieutenant Moran, Platoon Commander of the company to which Romano was transferred, also exhibited such sentiments. He instructed Romano not to conduct any association business or speak of the association with any men in the firehouse at any time while on duty.

The combination of the above factors is sufficient evidence on which PERB could find discrimination against an employee for the purpose of interfering with and discouraging participation in activities of the employee's organization. (Civil Service Law, § 209-a, subd. 1, pars. [a], [c].)

Besides ordering that the employer offer the three employees reinstatement to their former positions and assignments and that the employer cease and desist from transferring, demoting or engaging in similar discriminatory or coercive conduct towards its employees as a result of the exercise by its employees of their protected rights under the act, the decision under review directed the employer to post a certain notice at locations ordinarily used by it for written communications to its employees. The notice to be subscribed by the employer was required to state that the employer will offer to said employees reinstatement to their former positions and assignments and also that the employer will cease and desist from transferring, demoting or engaging in similar discriminatory or coercive conduct toward its employees as a result of the exercise by its employees of their protected rights under the act.

Such a notice would compel the employer city, in effect, to admit in writing something it has consistently denied. In the circumstances of this matter, the requirement of such a notice is unnecessary, an abuse of discretion, arbitrary and not in keeping with the legislative intent that the Public Employment Relations Board act as an objective and impartial agency for the prevention of improper public employer and public employee organization practices (see Civil Service Law, §§ 200, 201; § 205, subd. 5; cf. *Matter of Civil Serv. Employees Assn.* v. *Helsby,* 31 A D 2d 325, 330, affd. 24 N Y 2d 993; *Matter of City of Schenectady* v. *Helsby,* 57 Misc 2d 91, 92).

The determination should be modified by striking therefrom the requirement that the City of Albany post a notice as set forth therein and, except as so modified, confirmed, without costs.

REYNOLDS, J. P., STALEY, JR., GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Determination modified by striking therefrom the requirement that the City of Albany post a notice as set forth therein and, except as so modified, confirmed, without costs.